RANDY S. GROSSMAN
United States Attorney
MEGHAN E. HEESCH
Assistant U.S. Attorney
Minnesota Bar No. 0395912
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9442
Email: meghan.heesch@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>OTTO FERNANDO GODOY-CORDON,<br><br>Defendant. | Case No. 20-CR-2110-WQH<br><br>**UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY**<br><br>Date: September 8, 2022<br>Time: 9:00 a.m.<br>Honorable William Q. Hayes |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Randy S. Grossman, United States Attorney, and Meghan E. Heesch, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's Motion to Compel Discovery

//
//
//
//
//

# I.
# STATEMENT OF THE CASE

On July 17, 2020, a Grand Jury in the Southern District of California returned an Indictment charging Otto Fernando Godoy-Cordon ("Defendant") with International Conspiracy to Distribute Cocaine, in violation of Title 21, United States Code, Sections 959, 960, 963. ECF 1. Defendant was extradited from Guatemala to the United States on or about July 26, 2022, and made his initial appearance on July 27, 2022. ECF 7. Defendant was arraigned on the Indictment and entered a not guilty plea. *Id.*

On August 15, 2022, the United States filed Motions for Reciprocal Discovery and for Leave to File Further Motions. ECF 15. On August 31, 2022, Defendant filed a Motion to Compel Discovery. ECF 17. On August 31, 2022, this Court, upon Joint Motion of the parties, issued a Protective Order for discovery. ECF 19.

# II.
# STATEMENT OF FACTS

### A. Background of the Investigation

Beginning in November 2016, Homeland Security Investigations ("HSI") agents began investigating a drug trafficking and money laundering network. One of the leaders of the network operated out of Guadalajara, Mexico. Agents obtained authorization to intercept the Blackberry Messages ("BBMs") of members of this network. Through those interceptions, agents identified that his leader was using fleets of aircraft and boats to coordinate the transportation of large cocaine loads destined eventually for the United States. This Guadalajara-based leader coordinated directly with Guatemalan contacts, including a contact known as FNU LNU, aka TUTIS, who provided runway and logistical support for the Guadalajara leader's aircraft and pilots. These aircrafts, loaded with either cocaine or U.S. bulk currency, would land and take off from runways in Guatemala without scrutiny. The BBMs intercepted in this case indicate that Guatemalan officials were paid by the drug trafficking organization to allow these aircraft to fly in Guatemalan airspace and land on clandestine runways, all while operating "under the radar."

### B. Identification of Defendant's Involvement in the DTO

Agents separately began intercepting TUTIS's BBMs and learned about an additional network co-conspirators in Guatemala. Through these interceptions, one of these officials assisting in the transiting of aircraft was identified as Colonel in the Guatemalan army named Otto Fernando GODOY-Cordon, aka "Coro" who used BBM username "TOHIL." The messages between GODOY and his co-conspirators spanned from November 2017 to February 2018 and showed his involvement in using his official position to aid the drug trafficking organization's drug and money runs by accessing records, identifying clandestine runways, and finding air traffic controllers to work. Pursuant to an operation conducted by Guatemalan authorities in February 2018, GODOY was arrested and his Blackberry device was seized. A search of the seized Blackberry provided photographs, including selfies and banking documents with his full name. The IMEI on the seized device matches the IMEI of TOHIL's intercepted BBM messages. In intercepted messages, GODOY also self-identified to TUTIS with his full name in connection with receiving payment for his prior activities in furtherance of the conspiracy. The seized cellphone also contained photos of cocaine, runways, and depictions of GPS coordinates, consistent with his activities on the wiretap.

### III.
### ARGUMENT

### A. Motion to Compel Discovery

The United States recognizes its obligation under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) to provide evidence that is either exculpatory or could be used to impeach United States witnesses including material information regarding demonstrable bias. The United States has and will continue to perform its duty to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment. The United States recognizes that its obligation under *Brady* covers not only exculpatory evidence but also evidence that could be used to impeach witnesses who testify on behalf of the United States.

*See Giglio*, 405 U.S. at 154; *United States v. Bagley*, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the defense. *Bagley*, 473 U.S. at 682; *United States v. Agurs*, 427 U.S. 97, 1070 (1976). "Evidence is material, and must be disclosed (pursuant to *Brady*), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." *Kyles v. Whitley*, 514 U.S. 419, 436-37 (1995).

Defendant's motion makes several discovery requests. The United States will provide discovery in accordance with Fed. R. Crim. P. 16, the Jencks Act (18 U.S.C. § 3500), and *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. As a legal matter, the United States opposes the motion to the extent it seeks discovery beyond the boundaries of those authorities, and the reasons for our opposition to certain specific requests are set forth below.

(1) <u>Defendant's Statements</u>. The United States has produced Defendant's Blackberry messages intercepted on the wiretap, along with his statements in cellphone downloads conducted in Guatemala and various other statements in materials obtained from Guatemala. Defendant was not interviewed by agents when he was extradited to the United States. All of Defendant's other known statements have been produced. The United States will continue to verify with each agent involved in the investigation and arrest of Defendant that no additional statements were made. Any additional statements will be produced.

(2) <u>Arrest Reports, Notes, Dispatch tapes.</u> The United States has produced all reports and rough notes, including reports obtained in Guatemala. There are no dispatch tapes for this case.

(3) <u>Reports of Scientific Tests or Examinations</u>. The Government will comply with Fed. R. Crim. P. 16(a)(1)(F), and currently does not have any scientific test or examination materials in its possession.

(4) *Brady* Material. As to exculpatory information, the United States is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and will continue to comply.

(5) Information that may result in a lower sentence. The United States has already produced all information regarding the nature and circumstances of the offense which would be material under 18 U.S.C. § 3553 and will continue to comply with its obligation. The United States does not believe that information which may result in a lower sentence constitutes *Brady*.

(6) Prior record. Defendant does not have any prior criminal history in the United States but does have a conviction in Guatemala. Those Guatemala court records were provided in discovery.

(7) 404(b) and 609 Disclosures. If the U States intends to offer any evidence under Rule 404(b) or 609 of the Federal Rules of Evidence, it will provide notice promptly to Defendant in writing.

(8) Evidence seized. Copies and photographs of evidence seized in Guatemala were produced in discovery. The bulk cash seized in Guatemala was not preserved due to an issue in Guatemala. The United States invites Defendant to view the original materials provided by Guatemala at Defendant's convenience.

(9) Preservation. The United States has taken steps to preserve the evidence in this case. To the extent that Defendant requests for a specific item to be preserved, the United States will promptly respond to Defendant's request. The United States will preserve all evidence to which Defendant is entitled, but objects to any global request for preservation of all evidence as contrary to *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988) (finding it improper to impose on the government "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution").

(10) Tangible objects. Defendant is welcome to inspect, copy or test all documents and tangible objects with adequate notice and coordination with the United States.

(11) <u>Evidence of Bias or Motive to Lie</u>. The United States is not aware of any bias or motive to lie of any government witness, but will disclose it to the defense should the government become aware.

(12) <u>Impeachment Evidence</u>. The United States is not presently aware of criminal acts engaged in by government witnesses. An inquiry pursuant to *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991) will be conducted by the U.S. Attorney's Office. The government reserves the right move to disclose any pertinent information under protective order or after the Court's *in camera* review. Defendant's motion to compel broadly cites *Brady* for this requirement, but in *United States v. Kohring*, 637 F.3d 895, 902 (9th Cir. 2011), not all prior criminal convictions are per se *Brady*. Instead, undisclosed evidence must be admissible or capable of being used for impeachment to show prejudice under *Brady*. *Id.* Thus, the United States will inquire about prior criminal acts and convictions of witnesses and will disclose and discovered material, these disclosure do not necessarily fall under *Brady*.

Regarding Defendant's request to disclose whether any witness who has made a statement favorable to the Defendant, this request is too broad under Rule 16 as Defendant needs to make a requisite showing of materiality. The Government is not yet aware of Defendant's trial defense and Rule 16 does not require disclosure for any favorable statement. It is unclear what Defendant means when he requests "favorable" statements, and how this could be impeachment material. Assuming "favorable" means "material to preparing the defense," as required in Rule 16(a)(1)(E), the United States will comply.

(13) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The United States is not presently aware of any criminal investigation of any Government witnesses but will conduct such an inquiry. The government reserves the right move to disclose any pertinent information under protective order or after the Court's *in camera* review.

(14) <u>Evidence Affecting Perception, Recollection, Ability to Communicate or Truth-Telling</u>. The United States is not aware of aforementioned evidence, but will disclose it to the defense should the government become aware.

(15) <u>Witness Addresses</u>. The United States' witnesses at trial are all law enforcement witnesses and will be provided to Defendant once trial is scheduled. Several of the witnesses to the criminal acts are in Guatemala and Mexico and their whereabouts are not known to law enforcement and are outside of the jurisdiction of the United states to be compelled to testify at trial. Additionally, several of the witnesses are not yet identified because they used Blackberry messenger screen names and their identities are not yet verified.

(16) <u>Names of Witnesses Favorable to the Defendant</u>. The United States objects to this request as too broad and vague. It is unclear what is meant by a "favorable statement." As previously noted in response to request 12 (Impeachment Evidence), Defendant has not yet provided any hint at a defense to put the United States on notice as to what would be "favorable." The Court should require Defendant to further refine what is meant by providing witnesses "who made arguably favorable statement concerning the defendant" and to cite relevant case law for this requirement.

Defendant also requests names witnesses "who could not identify him or who was unsure of his identity." The United States is not presently aware of any such witnesses, but if this changes, the United States will disclose the name and the non-identification.

Finally, Defendant requests names of witnesses who participated in the crime charged. The United States is providing line sheets to Defendant which will have the aliases of co-conspirators. The United States has some of these co-conspirators identified and others are not identified. Reports have been produced (or are in the process of being produced) which provide identification for some of these aliases and co-conspirators, including other co-conspirators in Guatemala. Additionally, the United States has made Defendant aware of the related cases which indicted other co-conspirators in the criminal activity.

(17) <u>Statements Relevant to the Defense</u>. Defendant's request for statements "relevant" to the defense is too broad under Rule 16 as Defendant needs to make a requisite showing of materiality. The Government is not yet aware of Defendant's trial defense and

Rule 16 does not require disclosure of any "relevant" statement but instead any statements "material to preparing the defense." Fed. R. Crim. Pro. 16(a)(1)(E). Defendant relies on *United States v. Bailleux*, 685 F.2d 1105 (9th Cir. 1982) to read a broad rule about the United States' disclosure requirement for all statements by any witness. But *Bailleux* specifically states that the Government should "disclose any statement <u>made by the defendant</u> that may be relevant to any possible defense or contention that the defendant might assert." *Id.* at 1114 (emphasis added). The United States has already disclosed all of Defendant's statements and as stated above, will continue to disclose any statement made by the Defendant as required under Rule 16(1)(a)(A). However, the United States is not obligated to disclose any statement by any witnesses that may be "relevant" to yet-to-be known defense at trial.

(18) <u>Jencks Act Material</u>. The United States will comply with the Jencks Act. The United States continues to look into Jencks for all witnesses. The United States will disclose all Jencks material two weeks before trial.

## IV.
## CONCLUSION

The United States requests the Court deny Defendant's discovery motions where opposed.

DATED: September 3, 2022

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

/s/*Meghan E. Heesch*
MEGHAN E. HEESCH
Assistant United States Attorney

*United States' Response and Opposition to Motion to Compel Discovery*

8

*20-CR-2110-WQH*
*United States v. Godoy-Cordon*