MEGHAN BLANCO (238171)
LAW OFFICES OF MEGHAN BLANCO
   28202 Cabot Road, Suite 300
   Laguna Niguel, California 92677
   Telephone:  (949) 296-9869
   Facsimile:  (949) 606-8988
   E-mail:   mblanco@meghanblanco.com

Attorney for OTTO FERNANDO GODOY CORDON

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-CR-2110-WQH |
|---|---|
| Plaintiff, | SENTENCING MEMORANDUM |
| v. | |
| OTTO FERNANDO GODOY CORDON, | |
| Defendant. | |

Defendant Otto Fernando Godoy Cordon, by and through his counsel of record, Meghan Blanco, files the attached sentencing memorandum. Fort the reasons states below, Mr. Godoy seeks a 51-month sentence followed by a three year period of supervised release.

This memorandum and Mr. Godoy's sentencing recommendation are based on the attached memorandum of points and authorities, the files in this case, and any other argument of information the Court wishes to hear at the sentencing hearing.

1

Respectfully Submitted,

Dated: February 15, 2024

        *//s// Meghan Blanco*
        MEGHAN BLANCO
        Counsel for Defendant
        OTTO FERNANDO GOTOY CORDON

MEMORANDUM OF POINTS AND AUTHORITIES

A. Introduction

For approximately three-and-a-half months in late 2017 and early 2018, Mr. Godoy worked as a driver for Tutsi, an individual whom the United States and Guatemalan governments suspected of trafficking large quantities of cocaine from South America to Mexico, via Guatemala. Mr. Godoy knowingly drove Tutsi to meetings on 2-3 occasions; on one occasion he measured the length of an airstrip at Tutsi's request; and on another occasion, he was asked to pass along information concerning the location of an airstrip located within the Guatemalan Jungle.

In total, Mr. Godoy received approximately $1500 USD as payment. In February 2018, he was arrested, charged and convicted of working with Tutsi. He was ordered by the Guatemalan government to serve a four-year sentence, which was split between prison and home confinement. Once he completed that sentence, Mr. Godoy was charged a second time by the United States – a country he had never even visited before. He has remained in custody on the current charges since July 2020.

Since his arrest by authorities acting on the United States' behalf, Mr. Godoy has done everything possible to correct his past wrongs. He consented to extradition. He

pleaded expeditiously. And he participated in a day-long proffer with investigators and prosecutors from the United States and Guatemala.

He understands the gravity of his actions and is incredibly remorseful for his role in assisting Tutsi in the transportation of large quantities of cocaine through Latin America. He has already lost his home and over six years of his life.

He respectfully requests that the Court sentence him to 51-months in custody, which is at the high end of the Guideline's range. This will be on top of the four-year sentence he previously served for the exact same conduct. He further requests that the Court impose no fine, as he has no ability to pay a fine.

B. Facts and Personal Characteristics

Mr. Godoy enlisted in the Guatemalan military as a teenager. He worked dutifully for the military his entire life, rising to the level of colonel. In 2017, he was placed on inactive status, although he retained his military identification and could be called back to duty, if needed. However, from 2017 onward, he had no access special to military bases, information or personnel.

After being placed on inactive status, Mr. Godoy worked as a driver to supplement his military retirement.

4

He drove many people, including foreign tourists, around his hometown of Peten. In late 2017, he met an individual named Tutsi. He initially believed that Tutsi was a wealthy cattle owner. Cattle rearing is common in Guatemala. Wealthy ranchers clear large swaths of raw jungle where Mr. Godoy lives in Peten to rear cattle, which is often exported to other countries. (*See* https://www.theguardian.com/environment/2011/jul/12/guatemala-rainforest-deforestation-farming-foucart last accessed February 14, 2024).

At some point around October 2017, Mr. Godoy learned that Tutsi was not in the cattle business, but was in the drug business. After learning this, he continued to drive Tutsi to locations within his town on the 2-3 occasions Tutsi visited the area. He also measured a landing strip once and was asked by an old acquaintance to give Tutsi the location of another landing strip. Because he was not directly dealing with narcotics, Mr. Godoy did not appreciate the gravity, or illegality, of his actions. He certainly did not anticipate that his actions would land him in federal prison thousands of miles away, in the United States.

Tutsi used Mr. Godoy as a driver because he believed that Mr. Godoy could bypass military checkpoints (which are common in Guatemala) if he flashed his military identification. They were never stopped, and Mr. Godoy

never used his military credentials during his work for Tutsi.

In February 2018, Mr. Godoy was asked to pick up two individuals from a remote location in the jungle. Apparently, their plane had crashed. Mr. Godoy picked them up, as instructed. The three were subsequently arrested. Items the other individuals had on them were confiscated. Except for a handful of immaterial personal items, the items seized from Mr. Godoy's car trunk at the time of his arrest did not belong to him. They were concealed within luggage belonging to the individuals he picked up and Mr. Godoy did not know the contents of their luggage until after his arrest.[1]

C. Argument

1. Mr. Godoy Played a Minor Role

Mr. Godoy was not entrenched in the world of drug trafficking. Instead, he worked as Tutsi's driver on two-to-three occasions, over the course of approximately three months. He was not permitted in meetings (he waited in his car), where Tutsi presumably discussed the details of his drug business. Mr. Godoy's pay was commensurate with

---

[1] Apparently, a gun was confiscated. Mr. Godoy had no knowledge of the gun prior to his arrest. It belonged to one of the individuals in the plane.

6

his participation – he received approximately $1500 USD over the course of approximately three months. He had no pecuniary interest in Tutsi's narcotics; nor did he know where they were headed or how much they were being sold for. On the one occasion he measured the length of a landing strip, he did so with the GPS coordinates on his cellular telephone. He did now own the strip or have any pecuniary interest in it whatsoever. He simply logged the GPS coordinates at one end, walked its length, and then logged the GPS coordinates at the other end, similar to what a handy man in the area might do. And on the one occasion he passed along information concerning a landing strip in his town, he never received – or expected to receive – compensation. He was asked to pass along the information, so he did. The landing strip was never used. For these reasons, Mr. Godoy respectfully requests that the Court find that he played a minor role in the charged offense.

2. A 51-Month Sentence, on Top of the Four-Year Sentence He Has Already Served, is Appropriate

A 51-month sentence and three-year period of supervised release is sufficient but not greater than necessary to achieve the goals of sentencing.

7

Core principles in sentencing have now been resolved by the Supreme Court in *United States v. Booker,* 125 S. Ct. 738, (2005), *Gall v. United States*, 128 S.Ct. 586, 591 (2007) and *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558(2007). The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable. *Nelson v. United States, 129 S.Ct. 890,891 (2009.) What the Supreme Court has described as the "overarching provision" of 18 USC section 3553(a) is set forth in that provision's very first sentence – that "the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in subparagraph (2) of this subsection."* *Kimbrough v. United States*, 128 S. Ct at 570. Thus, factors justifying a sentence outside the guideline are no longer required to be extraordinary." *Gall*, 128 S.Ct. at 595. Congress could not have been clearer in directing that no limitation ... be placed on the information concerning the background, character, and conduct of a Defendant that a district court may receive and consider for the purpose of imposing an appropriate sentence. *Pepper v. United States, 131 S. Ct. 1229, 1241 (2011)*. Stated differently, after *Booker*, a sentencing court must (1) correctly calculate the advisory guideline range and (2) determine a reasonable sentence by considering the sentencing range provided by the Sentencing Guidelines and

8

the *§3553(a)* factors. *United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005)*.

Mr. Godoy concedes that cocaine is a dangerous drug and that drug trafficking presents a huge danger to society. He owns up to his actions and makes no excuses.

However, prior to his arrest on the original charges in Guatemala, Mr. Godoy had never been arrested or served any time in custody. District courts have varied downward in sentencing where a defendant, regardless of criminal history points, has not previously served a significant custodial term. See, e.g., *United States v. Collington*, 461 F.3d 805 (6th Cir. 2006) (upholding sixty-month downward variance in part because defendant had only been incarcerated for seven months prior to his crime, despite being in Criminal History Category IV. For first-time offenders, long periods of incarceration can do more damage than good by isolating individuals from their communities. "When prison sentences are relatively short, offenders are more likely to maintain their ties to family, employers, and their community, all of which promote successful reentry into society. Conversely, when prisoners serve longer sentences, they are more likely to become institutionalized, lose pro-social contracts in the community, and become removed from legitimate opportunities, all of which promote recidivism. *Valerie Wright, Deterrence in Criminal Justice, The Sentencing*

9

*Project*, at 7 (Nov. 2010). Indeed, studies reveal that low-risk offenders who are sentenced to long periods of incarceration are more likely to reoffend. *Id.* See also *United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming downward variance justified in part by court's finding that prison would mean more to this defendant than one who has been imprisoned before).

Further, because Mr. Godoy is not a United States citizen, he will not benefit from any reductions to which he would have normally been entitled under the First Step Act. Nor will the BOP credit him for the four-year sentence he already completed in Guatemala.

Mr. Godoy's suggested sentence of 51-months (on top of his previously imposed for year sentence) is a significant punishment for the crimes charged. It will deter future criminal conduct by Mr. Godoy and others who are inclined to aid drug traffickers. But it also recognizes the circumstances of Mr. Godoy's criminal conduct and offers him hope that with hard work and determination, he will be released from custody and be returned to Guatemala.

D. Conclusion

Mr. Godoy recognizes that he should be punished for his conduct in this case. But for someone who has already been punished for the same conduct, how much longer is

really necessary?  Accordingly, this Court should sentence him to 51 months' custody (which, when added to his previously imposed sentence, will equal 99 months in the aggregate), three years of supervised release, and no fine.

Dated: February 15, 2024

                         *//s// Meghan Blanco*
                         MEGHAN BLANCO
                         Counsel for Defendant
                         OTTO GODOY CORDON